HANNAH QUINN, as Administratrix, etc., of WILLIAM QUINN, Deceased, Respondent, *v.* PASQUALE PIETRO, Appellant.

*Negligence — exclamations of a party who ran down a bicycle rider, indicating his hostility to bicycles, are competent.*

In an action brought to recover damages resulting from the death of the plaintiff's intestate who, while riding a bicyle, was killed in a collision with a wagon driven by the defendant, proof that the defendant, shortly after his arrest, upon being asked whether he knew the intestate's bicycle, replied, "Damn the bicyle," or, "Damn the bicycle, anyway; they are no good," is admissible as tending to show a feeling of hostility toward bicycles on the part of the defendant which increases the probability that he had conducted himself with indifference to the rights of the rider of such a vehicle, especially where the circumstances indicate that the defendant willfully brought about the collision.

APPEAL by the defendant, Pasquale Pietro, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 10th day of June, 1898, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 8th day of June, 1898, denying the defendant's motion for a new trial made upon the minutes.

*A. F. Van Thun, Jr.,* for the appellant.

*James D. Bell,* for the respondent.

WILLARD BARTLETT, J. :

The plaintiff's intestate, a lad sixteen years old, while riding a bicycle on Eastern parkway, in Brooklyn, on a pleasant October afternoon, in broad daylight, was run down and killed by a team of horses drawing a wagon load of manure and driven by the defendant. The boy was wheeling westward along the Eastern parkway, and kept to the right of the highway, ten feet from the curb. The defendant, who was driving eastward, instead of keeping to the right of the middle of the road — which would have avoided any possibility of collision with the bicycle — changed his course and drove over to the left side, and down that side of the parkway at a fast trot. As the wagon and bicycle approached one another on that side, the rider of the wheel appears to have directed his course nearer and nearer to the curb for the purpose of avoiding the

defendant's wagon, but in vain. The defendant also kept turning toward the gutter until, finally, at a distance of four feet from the gutter, the wagon pole struck the bicycle and knocked off the rider, who was then trodden under the hoofs of the horses and run over by the wagon wheels, suffering injuries which resulted in his death.

This narrative presents a view of the accident based upon evidence which is in the case, and which the jury may well have believed to be true. There is other evidence which, if credited, would have justified them in adopting an entirely different view, exonerating the defendant; but it is manifest that the jury refused to believe his testimony to the effect that he did not leave the right side of the street, and that the boy had his head down all the time he was approaching the wagon until he struck it.

I think the proof authorized the jury to find that the death of the plaintiff's intestate was caused solely by the gross negligence of the defendant.

The plaintiff was allowed to prove what the defendant said shortly after his arrest, when asked whether he knew the boy's bicycle which had been brought to the police station. According to one witness his answer was, "Damn the bicycle." According to another, he responded, "Damn the bicycle, anyway; they are no good." The objection to proof of these declarations was not well taken. The evidence tended to show the existence of a feeling of hostility to bicycles on the part of the defendant which increased the probability that he had conducted himself with indifference to the rights of the rider of such a vehicle when he encountered the plaintiff's intestate on the Eastern parkway, and in this point of view the testimony was relevant, especially as there were circumstances indicating that the defendant might have willfully brought about the collision.

The verdict was reasonable in amount ($2,000), and the judgment and order refusing a new trial should be affirmed.

Judgment and order unanimously affirmed, with costs.